# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 13-CR-89 (SRN)** |
| **Plaintiff-Respondent,** | |
| **v.** | **MEMORANDUM OPINION AND ORDER** |
| **Robert Lee Powers,** | |
| **Defendant-Petitioner**. | |

Thomas M. Hollenhorst, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Plaintiff-Respondent

Robert Lee Powers, Reg. No. 03487-041, Federal Correctional Institution, P.O. Box 5000, Pekin, Illinois 61555, Pro Se Defendant-Petitioner

SUSAN RICHARD NELSON, District Judge

This matter is before the undersigned United States District Judge on Defendant-Petitioner Robert Lee Powers' pro se motion pursuant to 28 U.S.C. § 2255 for an order of this Court to vacate, set aside, or correct his sentence [Doc. No. 52]. Also before the Court are the following pro se motions filed by Powers: Motions for Return of Property [Doc. Nos. 54 & 60]; Motions to Amend [Doc. Nos. 61 & 66]; Motion to Reduce Sentence [Doc. No. 55]; and Motion to Take Judicial Notice [Doc. No. 62]. Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies Defendant-Petitioner's motions.

1

## I.    BACKGROUND

In April 2013, Powers was indicted on charges of being a felon in possession of a firearm (Count 1), in violation of 18 U.S.C. § 922 (g)(1) and 924 (e)(1), and for possession with intent to distribute heroin (Count 2), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)©.  (Indictment [Doc. No. 1].)  At his initial appearance, the Court appointed counsel to represent Powers.  (Minute Entry of 4/25/13 [Doc. No. 6].)  On April 26, 2013, Federal Defender Reynaldo Aligada entered an appearance as Powers' counsel.  (Notice of Appearance [Doc. No. 5].)

On July 17, 2013, Defendant-Petitioner pleaded guilty to the felon-in-possession charge in Count 1 of the Indictment, and in return, the Government agreed to dismiss the drug charge in Count 2 at the time of sentencing [Doc. Nos. 26 & 27].

At his plea hearing, Defendant-Petitioner explained that on May 18, 2013, police conducted a search of his apartment, during which they found five grams of heroin on his person, in addition to a bag containing a semi-automatic pistol.  (Plea Hearing Tr. at 28 [Doc. No. 47].)  Defendant-Petitioner admitted that he owned the weapon and the drugs. (Id.)  Powers also conceded that at the time of his possession of the firearm, he had previously been convicted of numerous felonies, at least three of which qualified as violent crimes or serious drug offenses under provisions of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e).  (Id. at 29-30.)  He also acknowledged that no one had forced him to possess the gun and he knew it was illegal for him to possess it because of his prior felony convictions.  (Id. at 30.)

2

Also at the plea hearing, Defendant-Petitioner expressed his satisfaction with the services of his counsel, Mr. Aligada.  (Id. at 6-7.)  In addition, Powers acknowledged his understanding of the plea agreement and that by pleading guilty, he was subject to a mandatory minimum sentence of 15 years pursuant to the ACCA, a maximum sentence of life, and a guideline range of 188 to 235 months.  (Id. at 11; 19-20.)  Further, Defendant-Petitioner indicated that he entered the plea voluntarily and that he was pleading guilty because he was, in fact, guilty of the crime.  (Id. at 31.)

His counsel also stated that regardless of the legal applicability of the ACCA to Powers' sentence, Powers found the act to be unfair as a matter of policy.  (Id. at 16.) Powers also expressed his understanding that any disagreement with the policies underlying the ACCA was a legislative matter, for which he could raise any concerns with his congressional representatives.  (Id. at 17.)  Finally, pursuant to the terms of the plea agreement, Powers waived his rights to direct appeal, subject to certain conditions.[1] (Id. at 20.)

Following the plea, a Presentence Investigation Report  ("PSR") was prepared by the United States Probation Office, which indicated that Powers had a history of numerous convictions, including several felony convictions.

In April 2014, based on Powers' guilty plea to Count 1, this Court sentenced

---

[1] The Plea Agreement did not address the waiver of Powers to collaterally challenge his sentence in a § 2255 motion, nor does the Government assert a waiver argument here.

Powers to a prison term of 188 months, five years of supervised release, and a $100

special assessment.  (Sentencing J. [Doc. No. 37].)  Count 2 of the Indictment was

dismissed on the motion of the Government.  (Id.)  Defendant-Petitioner did not object to

the PSR at sentencing.  (Sentencing Tr. at 3 [Doc. No. 44].)  As noted, the PSR detailed

Powers' criminal history, which included seven prior convictions that the Government

contends constitute qualifying convictions under the ACCA.  Defendant-Petitioner

unsuccessfully filed a direct appeal of his conviction.  (J. of 8th Cir. [Doc. No. 49].)

On May 6, 2015, Defendant-Petitioner filed the instant pro se motion under §

2255.  Powers identifies two bases for his motion: (1) ineffective assistance of counsel;

and (2) that his guilty plea was unlawfully induced or involuntarily made.  (Def.-Pet'r's §

2255 Mot. at 4; 6 [Doc. No. 52].)  In addition, he filed two motions to amend his § 2255

petition in light of a recent United States Supreme Court ruling, Johnson v. United States,

__ U.S. __, 135 S. Ct. 2551 (2015) [Doc. Nos. 61 & 66].  He also filed motions seeking

the return of $435 allegedly seized from him at the time of his arrest [Doc. Nos. 54 & 60].

Additionally, Defendant-Petitioner filed a motion seeking a modification of the period of

supervised release [Doc. No. 55].  Finally, Defendant-Petitioner requests an evidentiary

hearing and the appointment of counsel.  (Id.)

## II.   DISCUSSION

### A.      Section 2255 Motion

28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of

4

> Congress claiming the right to be released upon the ground that the sentence
> was imposed in violation of the Constitution or laws of the United States, or
> that the court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which imposed the sentence
> to vacate, set aside or correct the sentence.

> While § 2255 generally affords relief, it is only available in limited circumstances.

The Eighth Circuit Court of Appeals has held that:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of
> constitutional rights and for a narrow range of injuries that could not have
> been raised on direct appeal and, if uncorrected, would result in a complete
> miscarriage of justice.  A movant may not raise constitutional issues for the
> first time on collateral review without establishing both cause for the
> procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir.1996) (citation omitted).  Beyond

jurisdictional and constitutional errors, the permissible scope of § 2255 claims is

"severely limited."  Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011) (en

banc).

The primary basis for Powers' claim of ineffective assistance of counsel is that his

counsel "failed to investigate, provide proper legal advice" and "induce[d] the guilty plea

based on erroneous and faulty advice[,] rendering the plea involuntary."  (Def.-Pet'r's

Mem. Supp. § 2255 Mot. at 2 [Doc. No. 53].)  Essentially, Powers contends that he did

not qualify as an armed career criminal under the ACCA, which requires a mandatory 15-

year sentence, because his underlying criminal convictions did not meet the statutory

requirements.  (Id. 2-9.)  Because his attorney allowed him to plead guilty and failed to

challenge or object to the inclusion of certain prior convictions, he argues that he received

a much higher sentence under the ACCA than was legally justified.  (Id.)   The Court therefore addresses the applicability of the ACCA in order to address Powers' claim of ineffective assistance of counsel.

### 1.    Application of the ACCA

As a preliminary matter, Powers appears to confuse the ACCA with rules in the Sentencing Guidelines regarding the calculation of a defendant's criminal history category.  While the ACCA and the Sentencing Guidelines contain some similarities, they are not the same.  The Sentencing Guidelines, § 4A1.1, provide the rules for determining how many criminal history points a defendant acquires for each prior conviction, depending on the type and age of that conviction.  Under the ACCA, recidivists convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g), must be sentenced to a minimum 15-year term of imprisonment if they have three prior state or federal convictions for serious drug offenses or violent felonies, regardless of the age of the prior convictions.  18 U.S.C. § 924(e).

"Serious drug offenses" under the ACCA include offenses under state law "involving the manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . ," for which a maximum term of imprisonment of 10 years or more is prescribed by law. 18 U.S.C. at § 924(e)(2)(A)(ii).

The ACCA defines "violent felonies" as those punishable by a term of imprisonment exceeding one year (1) that have as an element the use, attempted use, or threatened use of physical force against another; or (2) that are burglary, arson, or

6

extortion, or crimes involving the use of explosives; or (3) under the section's "residual clause," that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." Id. at § 924(e)(2)(B)(i)-(ii).  "Physical force," noted in (1) above, is synonymous with "violent force – that is, force capable of causing physical pain or injury to another person."  United States v. Johnson, 559 U.S. 133, 140 (2010) (citing Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003)).  As to the residual clause, quoted in (3) above, the Supreme Court recently found it unconstitutionally vague and therefore effectively void.  Johnson, 135 S. Ct. at 2563.

When determining whether a defendant's prior conviction is a qualifying offense under the ACCA, the Supreme Court generally requires courts to adopt a "categorical approach."  Taylor v. United States, 495 U.S. 575, 601–02 (1990).  Under the categorical approach, courts typically consider only the fact of conviction and the statutory definition of the prior offense rather than the facts underlying the defendant's prior conviction.  Id. at 602.  In reviewing the convicting statute in question, courts are to consult the law that applied at the time of conviction for that offense.  McNeill v. United States, 563 U.S. 816, 131 S. Ct. 2218, 2224 (2011) (finding that the sentencing court was to determine whether a state law conviction was a serious drug offense by consulting the state law at the time of the defendant's state conviction for that offense).

As noted, under the ACCA, there is no "staleness limitation" for prior offenses.  United States v. Rodriguez, 612 F.3d 1049, 1056 (8th Cir. 2010) (stating, "[§ 924(e)] does not contain a time limit for predicate offenses and [prior Courts] have concluded

7

Congress would have included a time limit had it wanted to do so.").  To the extent that Powers challenges the Court's consideration of older felony convictions in determining his sentence under the ACCA, any such argument is rejected.  The ACCA permits the Court to consider his prior felonies, provided they otherwise qualify under the terms of the statute.

### a.      Serious Drug Offenses

As noted earlier, under the ACCA, a serious drug offense arising under state law is one "involving . . . distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).

The Government contends that four of Defendant-Petitioner's Minnesota state court drug offenses qualify as serious drug offenses under the ACCA:  (1) his 1989 conviction for third-degree sale of crack/cocaine, in violation of Minn. Stat. § 152.023, subd. 1(1) (1989); (2) his 1993 conviction for fourth-degree intent to sell crack cocaine, in violation of Minn. Stat. § 152.024 (1992); (3) his 1997 conviction for first-degree conspiracy to commit a controlled substance crime, in violation of Minn. Stat. § 152.021.11 (1996); and (4) his 2000 conviction for third-degree sale of controlled substances, in violation of Minn. Stat. § 152.023, subd. 1(1) (1999).

### i.      Third-Degree Sale of Crack/Cocaine (1989)

Powers' 1989 conviction for third-degree sale of crack/cocaine for selling cocaine base to an undercover officer qualifies as a serious drug offense because the offense

carried a 20-year maximum sentence for a person who "unlawfully sells one or more mixtures containing a narcotic drug."  Minn. Stat. §§ 152.023, subd. 1(1) & subd. 3(a) (1989).  This offense, which included a possible sentence greater than 10 years, is one "involving . . . distributing, or possessing with intent to . . . distribute, a controlled substance . . . ."  18 U.S.C. § 924(e)(2)(A)(ii).

### ii.      Fourth-Degree Intent to Sell Crack Cocaine (1993)

As to Powers' 1993 conviction for fourth-degree intent to sell crack cocaine, Powers states that it involved "one single crack/cocaine rock, a long metal 'crack' pipe and metal crack pipe poker and ninety dollars in cash."  (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 3 [Doc. No. 53].)  He argues that this offense should not have been considered a qualifying offense because "it was clearly a possession case."  (Id.)

Again, when determining whether a prior state court conviction is a qualifying offense under the ACCA, courts apply a modified categorical approach, and consider a very limited set of documents, only where the prior conviction is for a crime with one or more elements of the offense in the alternative.  United States v. Bankhead, 746 F.3d 323, 326 (8th Cir. 2014) (citing Descamps v. United States, __ U.S. __, 133 S. Ct. 2276, 2281 (2013)).  The statutory provision under which Powers was convicted in 1993 criminalized the unlawful sale of one or more mixtures of a controlled substance classified in schedule I, II or III, except marijuana or tetrahydrocannabinols.  Minn. Stat. § 152.024, subd. 1 (1992).  Cocaine was a Schedule II controlled substance.  Minn. Stat. § 152.02, subd. 3(1)(d) (1992).  This statute has a "single, indivisible set of elements," Bankhead, 746

9

F.3d at 326 (citation omitted), making use of the modified categorical approach improper. Thus, the Court considers only the fact of conviction and the statutory definition of the prior offense.

The statute carried a 15-year maximum sentence for a person who unlawfully sold the controlled substances in question.   Minn. Stat. § 152.024, subd. 3 (1992).  The term "unlawfully," used for both sale and possession crimes under the terms of § 152.024, subd. 1 (1992) was then defined as "selling, possessing, or possessing with intent to sell a controlled substance in a manner not authorized by law."  Minn. Stat. § 152.01, subd. 20 (1992).  The Court thus finds that this conviction for intent to sell crack cocaine constitutes a serious drug offense under the ACCA because it "involv[es]. . . possessing with intent to . . . distribute, a controlled substance . . . ." and the possible sentence exceeded the 10-year requirement under the ACCA.  18 U.S.C. § 924(e)(2)(A)(ii).

### iii.    First-Degree Conspiracy to Commit a Controlled Substance Crime (1997)

Powers' 1997 conviction for first-degree conspiracy to commit a controlled substance crime also falls within the definition of a serious drug offense under the ACCA. The maximum possible sentence for this conviction was 30 years for one who conspires to "unlawfully sell[ ] one or more mixtures of a total weight of ten grams or more containing cocaine."  Minn. Stat. §§ 152.021, subd. 1(1) & subd. 3(a) (1996); Minn. Stat. § 152.096, subd. 1 (1996).  This offense qualifies as a serious drug offense under state law because it "involve[ed] . . . distributing . . . a controlled substance . . . for which a

10

maximum term of imprisonment of ten years or more [was] prescribed by law."  18

U.S.C. § 924(e)(2)(A)(ii).

Defendant-Petitioner further argues that conspiracy is not a crime warranting

career offender status, citing United States v. Price, 990 F.2d 1367, 1370 (D.C. Cir.

1990).  (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 4 [Doc. No. 53].)  Not only did Price

involve career offender status under the Sentencing Guidelines, as opposed to the ACCA,

which is at issue here, but the Eighth Circuit, and numerous other courts, have rejected

Price, holding that conspiracy to distribute a controlled substance constitutes a "controlled

substance offense" within the meaning of the career offender provisions of the Sentencing

Guidelines.  United States v. Mendoza-Figueroa, 65 F.3d 691, 692 n.2 (8th Cir. 1995)

(collecting cases).

### iv.     Third-Degree Sale of Controlled Substances (2000)

Powers' 2000 conviction for third-degree sale of controlled substances, for which a

maximum sentence of 20 years could be imposed, Minn. Stat. § 152.023, subd. 1(1) &

subd. 3(a) (1999), also qualifies as a serious drug offense under the ACCA.  This offense

proscribed the unlawful selling of "one or more mixtures containing a narcotic drug."

Minn. Stat. § 152.023, subd. 1(1) (1999).  Accordingly, this is a "serious drug offense"

under the ACCA, as it is "an offense under State law, involving . . . distributing . . . a

controlled substance . . . for which a maximum term of imprisonment of ten years or more

is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).

b.      **Violent Felonies**

i.      **Enumerated Offense of Burglary**

In 1975, Defendant-Petitioner was convicted for burglary in violation of Illinois state law.  Under Illinois law, the offense was considered a Class 2 felony, Ill. Rev. Stat., ch. 38, § 19-1(b) (1973), for which a sentence of over one year to 20 years applied.  Ill. Rev. Stat., ch. 38, § 1005-8-1 (1975).  Burglary is one of four specifically "enumerated offenses" under the ACCA's definition of violent felony.  18 U.S.C. § 924(e)(2)(B)(ii).

Defendant-Petitioner argues that his conviction for this offense is not a qualifying offense, citing a provision of the Sentencing Guidelines, because the burglary occurred in a warehouse, and was therefore not violent.  (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 6 [Doc. No. 53]) (citing U.S.S.G. § 4B1.4).  As noted, the Sentencing Guidelines and the ACCA, while similar in many respects, are not identical.  While a crime of violence under the Sentencing Guidelines includes "burglary of a dwelling,"  U.S.S.G. § 4B1.2(a)(2), one of the enumerated violent felonies under the ACCA is simply "burglary."  18 U.S.C. § 924(e)(2)(B)(ii).  The Supreme Court has found that Congress intended to include burglary in the ACCA in "the generic sense in which the term is now used in the criminal codes of most States."  Taylor, 495 U.S. at 598.  The Court thus determined that burglary within the meaning of § 924(e)(2)(B)(ii) is "any crime . . . having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  Id. at 599.

The Court therefore consults the statute of conviction to determine whether it

qualifies as a predicate offense under § 924(e)(2)(B)(ii) of the ACCA.  See <u>United States</u>

<u>v. Dawn</u>, 685 F.3d 790, 794 (8th Cir. 2012) (discussing the use of the categorical

approach).  The statutory provision under which Powers was convicted provided:

> A person commits burglary when without authority he knowingly enters or
> without authority remains within a building, housetrailer, watercraft,
> aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car,
> or any part thereof, with intent to commit therein a felony or theft.  This
> offense shall not include the offenses set out in Section 4-102 of The Illinois
> Vehicle Code.

Ill. Rev. Stat. 1973, ch. 38, § 19-1(a) (now codified at 720 Ill. Comp. Stat. § 5/19-1

(2013)).  This burglary statute falls within the Supreme Court's definition of generic

burglary, as it is contains the basic element of "unlawful or unprivileged entry into, or

remaining in, a building or structure, with intent to commit a crime."  <u>Taylor</u>, 495 U.S. at

598.

Powers also apparently believes that this prior offense was improperly considered

under the ACCA's violent felony provision for crimes that have "as an element the use,

attempted use, or threatened use of physical force against the person of another."  18

U.S.C. § 924(e)(2)(B)(i).  He asserts that "no one was harmed, no force was used."  (Def.-

Pet'r's Mot. to Amend at 1 [Doc. No. 66].)  However, § 924(e)(2)(B)(i) is inapplicable

because this prior burglary offense qualifies as a specifically enumerated violent felony

under § 924(e)(2)(B)(ii).  For all the reasons noted above, Powers' prior conviction for

burglary was properly considered a predicate offense under the ACCA.

### ii.     Offenses that Contain the Element of the Use, Attempted Use, or Threatened Use of Physical Force Against Another Person

As noted, the ACCA considers as predicate offenses crimes that have as an element the use, attempted use, or threatened use of physical force against another.  18 U.S.C. § 924(e)(2)(B)(i).  The Supreme Court has held that "physical force" under the ACCA "means <u>violent</u> force – that is, force capable of causing physical pain or injury to another person."  <u>Johnson</u>, 559 U.S. at 140.  The Government contends that two of Defendant-Petitioner's prior convictions fall under this provision of the ACCA.  (Govt's Mem. in Opp'n to § 2255 Mot. at 7-9 [Doc. No. 67].)

### (1)     Attempted First Degree Criminal Sexual Conduct

In 1993, Powers pleaded guilty to the felony offense of attempted first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342.   At the time of his conviction, Minn. Stat. § 609.342, subd. 1 (1992) provided as follows:

> Subdivision 1. Crime defined. A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:
>
> (a) the complainant is under 13 years of age and the actor is more than 36 months older than the complainant. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense;
>
> (b) the complainant is at least 13 but less than 16 years of age and the actor is more than 48 months older than the complainant and in a position of authority over the complainant, and uses this authority to cause the complainant to submit. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense;

© circumstances existing at the time of the act cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another;

(d) the actor is armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it to be a dangerous weapon and uses or threatens to use the weapon or article to cause the complainant to submit;

(e) the actor causes personal injury to the complainant, and either of the following circumstances exist:

    (i) the actor uses force or coercion to accomplish sexual penetration; or

    (ii) the actor knows or has reason to know that the complainant is mentally    impaired, mentally incapacitated, or physically helpless;

(f) the actor is aided or abetted by one or more accomplices within the meaning of section 609.05, and either of the following circumstances exists:

    (i) an accomplice uses force or coercion to cause the complainant to submit; or

    (ii) an accomplice is armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant reasonably to believe it to be a dangerous weapon and uses or threatens to use the weapon or article to cause the complainant to submit;

(g) the actor has a significant relationship to the complainant and the complainant was under 16 years of age at the time of the sexual penetration. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense; or

(h) the actor has a significant relationship to the complainant, the complainant was under 16 years of age at the time of the sexual penetration, and:

    (i) the actor or an accomplice used force or coercion to accomplish the penetration;

(ii) the actor or an accomplice was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it could be a dangerous weapon and used or threatened to use the dangerous weapon;

(iii) circumstances existed at the time of the act to cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another;

(iv) the complainant suffered personal injury; or

(v) the sexual abuse involved multiple acts committed over an extended period of time.

Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense.

As noted, in determining whether a prior conviction constitutes a violent felony courts typically apply a categorical approach, referring to the elements of the offense as defined in the statute of conviction, rather than the particular facts and circumstances of the prior conviction.  <u>Dawn</u>, 685 F.3d at 794 (discussing similar "crime of violence" provision in Sentencing Guidelines § 4B1.2).  In certain circumstances, however, courts may apply a modified categorical approach to determine whether the prior offense falls under the ACCA.  <u>Bankhead</u>, 746 F.3d at 325-26.  The modified categorical approach may only be applied where the statute under which the defendant was previously convicted is "a so-called divisible statute which sets out one or more elements of the offense in the alternative."  <u>Id.</u> (citing <u>Descamps</u>, 133 S. Ct. at 2281) (internal quotations and citations omitted).  In such circumstances, courts may look to a limited class of documents such as the charging document, plea colloquy, or jury instructions to

determine which portion of the statute provided the basis for conviction and thus whether the prior offense is a qualifying offense under the ACCA. <u>Dawn</u>, 685 F.3d at 794-95. These documents are known as "<u>Shepard</u> documents." <u>United States v. Williams</u>, 627 F.3d 324, 328 (8th Cir. 2010) (citing <u>Shepard v. United States</u>, 544 U.S. 13, 15 (2005)). Courts may consult <u>Shepard</u> documents "only when the statute of conviction embraces several alternative bases for conviction, not all of which qualify as an ACCA predicate, and the sentencing court must determine which statutory phrase was the basis for conviction.'" <u>Bankhead</u>, 746 F.3d at 326 (citing <u>Descamps</u>, 133 S. Ct. at 2285-86) (internal quotations and citations omitted). Courts do not refer to <u>Shepard</u> documents "to see how the particular crime at issue was committed." <u>Williams</u>, 627 F.3d at 328. Instead, they are used simply to determine which part of the statute was violated. <u>Id.</u> However, if the crime for which the defendant was convicted "has a single, indivisible set of elements," the court may not apply the modified categorical approach. <u>Bankhead</u>, 746 F.3d 326 (quoting <u>Descamps</u>, 133 S. Ct. at 2281).

The statute of conviction here criminalized numerous acts, not all of which may necessarily fall under the ACCA's violent felony provision for predicate crimes that have as an element "the use, attempted use, or threatened use of physical force against another." 18 U.S.C. § 924(e)(2)(B)(i). As noted, under <u>Johnson</u>, 559 U.S. at 140, physical force contemplates violent force. While some of the conduct that was criminalized under the 1992 verison of § 609.342 clearly involves the use of or threatened use of violent force, the statute also criminalized conduct that, while harmful,

17

does not necessarily involve the use of violent force, such as certain acts involving underage persons.  <u>See, e.g.</u>, Minn. Stat. § 609.342, subd. 1(b), (g) (1992).  Accordingly, the Court consults <u>Shepard</u> documents to determine the portion of the statute under which Powers was convicted.

The plea colloquy from Powers' 1993 conviction clearly indicates that he was convicted under Subdivision 1(d) of the statute, (<u>Minnesota v. Powers</u>, No. CR-92-96163, Plea Hearing Tr. at 7-8 (Hennepin Cnty. Dist. Ct. May 17, 1993)), which involved the use of "a dangerous weapon or [similar article] used . . . to lead the complainant to reasonably believe it [was] a dangerous weapon and [the] use[ ] [of] or threaten[ed] . . . use [of] the weapon . . . cause[d] the complainant to submit [to sexual penetration]."  Minn. Stat. § 609.342, subd. 1(d) (1992).  At the time of the offense, violation of this statute carried a possible sentence of 25 years.  <u>Id.</u> § 609.342, subd. 2(a) (1992).  The Court finds that this offense qualifies as a violent felony under the ACCA, § 924(e)(2)(B)(i), as it involved the attempted use, or threatened use of violent physical force – through a dangerous weapon or similar article – that could cause physical pain or injury to another person and the crime was punishable by a term of imprisonment exceeding one year.

### (2)   Assault of Government Employee

In 1988, Defendant-Petitioner pleaded guilty to the violation of 18 U.S.C. § 111. At that time, the version of the statute under which Powers was convicted provided as follows:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or

interferes with any [federal employee] while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both .

18 U.S.C. § 111 (1948); § 1114 (1970).

In determining whether a prior conviction constitutes a violent felony, the Court turns to the statute of conviction. Here, 18 U.S.C. § 111 (1948) penalized six different acts in the alternative, i.e., applying to whoever "forcibly assaults, [or] resists, [or] opposes, [or] impedes, [or] intimidates, or interferes with" a federal employee in the course of his or her duties. Section 111 contained several alternative bases for conviction, not all of which may necessarily qualify as violent felonies under the ACCA's provision for predicate crimes that have as an element "the use, attempted use, or threatened use of physical force against another." 18 U.S.C. § 924(e)(2)(B)(i). Accordingly, to ascertain the portion of the statute under which Powers was convicted, the Court applies the modified categorical approach, examining a limited set of documents from the underlying case. See Bankhead, 746 F.3d at 326.

The Indictment for this offense charged that:

ROBERT LEE POWERS

did forcibly assault and interfere with a person designated in 18 U.S.C. § 1114, to wit; an employee of the United States Postal Service engaged in the performance of his official duties, in violation of Title 18, United States Code, Section 111.

19

(Indictment, United States v. Powers, No. CR 4-88-29 (D. Minn. Mar. 9, 1988) [Doc. No.

1].)   Powers pleaded guilty to the offense in the Indictment.   (Plea Agreement, United

States v. Powers, No. CR 4-88-29 (D. Minn. May. 11, 1988) [Doc. No. 14].)   Since

Powers was convicted for both forcibly assaulting and forcibly interfering with a Postal

Service employee, the Court analyzes whether either of those acts fall under the ACCA

provision in § 924(e)(2)(B)(i) that defines violent felonies as those that have as an

element the use, attempted use, or threatened use of physical force against another.

The Court notes that while § 111 was subsequently amended and now delineates

between "simple assault," which is classified as a misdemeanor, and felonious assault,

which involves "physical contact with the victim of that assault" or "the intent to commit

another felony,"  18 U.S.C. § 111 (2008), the 1974 version of the statute made no

distinction between such conduct; the acts penalized were felonies.  Given the

Indictment's charge of forcible assault, the Court finds that the use of the word "forcible,"

to modify "assault" demonstrates that physical force was used.  As to whether that

physical force was violent, as required by Johnson, Powers himself cites language in the

Plea Agreement in which he admitted to the use of violent physical force in committing

this offense, stating "This assault by striking, beating, and wounding is graded as a level

six pursuant to 2A2.3(a)(1) of the Guidelines."  (Def.-Pet'r's Mot. to Amend at 2-3 [Doc.

No. 61]) (citing United States v. Powers, No. CR 4-88-29, Plea Agmt. at 2, ¶ 7(b) (D.

Minn. May 9, 1988 [Doc. No. 14].)[2]

While the Eighth Circuit does not appear to have addressed whether a violation of § 111 constitutes a violent felony, Powers pleaded guilty to elements of the § 111 offense that amount to a violent felony.   In other words, Powers' conviction rested on the finding that he used violent force, or "physical force" within the meaning of § 924(e)(2)(B)(i). Accordingly, Powers' conviction for this offense qualifies as a predicate offense under § 924(e)(2)(B)(i).[3]

However, even if the § 111 offense does not constitute a violent felony under 924(e)(2)(B)(i), Powers nevertheless would still be subject to the ACCA's 15-year mandatory minimum sentence because he has three or more other qualifying prior convictions, as discussed herein.

---

[2]   The Plea Agreement goes on to say, "None of the aggravating factors of 2A2.2(b) are present."   (Def.-Pet'r's Mot. to Amend at 2-3 [Doc. No. 61]) (citing United States v. Powers, No. CR 4-88-29, Plea Agmt. at 2, ¶ 7(b) (D. Minn. May 9, 1988 [Doc. No. 14].)   Powers cites this language to argue that this offense does not qualify as a predicate offense under the ACCA's residual clause.  (Def.-Pet'r's Mot. to Amend at 2-3 [Doc. No. 61].)  The Court rejects this argument.  First, the residual clause is inapplicable. Instead, this offense qualifies as a predicate offense under § 924(e)(2)(B)(i), which applies to predicate offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another."  Second, the "aggravating factors of 2A2.3(a)(1)" that were not present are that the victim sustained bodily injury or that the offense resulted in substantial bodily injury to a person under age 16.  See U.S.S.G. § 2A2.3.  These elements are not required under § 924(e)(2)(B)(i) of the ACCA.

[3]   Powers also contends that the assault of the mail carrier cannot constitute a violent felony because "Minnesota state law as all other states [sic] that one must show knowledge and intent and in this case there was no knowledge or intent to harm the postal worker . . . ."  (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 8 [Doc. No. 53].)  However, any reliance on Minnesota law is misplaced, as the statute of conviction was a federal statute.

### iii.    Residual Clause

As noted, qualifying violent felonies in the ACCA include: (1) the four enumerated offenses of burglary, arson, or extortion, or crimes involving the use of explosives; (2); crimes that have as an element the use, attempted use, or threatened use of physical force against the person of another; and (3) crimes that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(i)-(ii).  This last provision, noted in (3) above, is known as "the residual clause."  While the Supreme Court in Johnson recently found the residual clause unconstitutionally vague and therefore effectively void, it made clear that its holding was limited to the residual clause itself.  Johnson, 135 S. Ct. at 2563.  The Court's ruling did not call into question the constitutionality of the other categories of qualifying offenses under the ACCA.  Id.

Powers moves to amend his § 2255 motion in light of Johnson.  (Def.-Pet'r's Mots. to Amend at 1 [Doc. Nos. 61 & 66].)  He appears to argue that his prior convictions may not be considered under ACCA's residual clause as qualifying convictions; in particular, he identifies his convictions for burglary, assault of a government employee, and attempted first degree sexual assault.  (Id.)  This argument fails because all of Powers' qualifying offenses fall under the other categories of offenses – serious drug offenses, the enumerated offense of burglary, and crimes that contain as an element the use or threatened use of physical force against another – to which Johnson does not apply.  Accordingly, Powers' request to amend his § 2255 motion to assert a claim based on

Johnson is denied, as any such amendment would be futile.

### 2.   Ineffective Assistance of Counsel

In order to obtain relief for ineffective assistance of counsel, Defendant-Petitioner must establish both that his counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 688 (1984).  Defendant-Petitioner bears the burden of establishing to a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.  Id.  This is a "heavy burden," Apfel, 97 F.3d at 1076, requiring a showing that the deficiency in counsel's performance was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  A defendant must show that counsel's errors were not the result of "reasonable professional judgment."  Id. at 690.  Moreover, a court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance.  Id.  A defendant must then show that the deficient performance actually prejudiced the outcome of the proceedings.  Id. at 687.

In the Affidavit of Powers' former counsel, Reynaldo Aligada, submitted by the Government in opposition to Defendant-Petitioner's motions, Aligada sets forth his understanding of the law, Powers' criminal history, and Aligada's representation of Powers.[4]  As noted, Powers admitted in the colloquy at the plea hearing to possessing the

_____

[4]  The Court entered an order confirming the waiver of Powers' attorney-client privilege as to Aligada's representation of him, by virtue of Powers' filing of his § 2255

firearm in his bag during the execution of a search warrant. (Plea Hearing Tr. at 28-29 [Doc. No. 47].) Aligada states that he researched the applicable statute, 18 U.S.C. § 922(g)(1), and determined that Powers' knowing possession of a firearm was a crime, and informed him of that fact. (Aligada Aff. ¶ 6 [Doc. No. 67-1].)

Aligada attests that at the time of Powers' indictment in the instant case, Powers had more than 10 felony convictions. (Id. ¶ 4.) Aligada determined that seven of those prior felony convictions qualified as predicate offenses pursuant to the ACCA and the Sentencing Guidelines section applicable to ACCA cases. (Id.) In the Affidavit, Aligada correctly observes that pursuant to 18 U.S.C. § 924(e), only three predicate offenses are required to qualify for the 15-year mandatory minimum penalty for an Armed Career Criminal. (Id.)

Furthermore, Aligada states that he reviewed the conviction documents and applicable statutes with Powers on multiple occasions and offered his legal advice that Powers would be considered an Armed Career Criminal at the time of sentencing. (Id. ¶ 5.) He explained to Powers that if he pleaded guilty, he would face a 15-year mandatory minimum penalty and a recommended sentencing guideline range of 188-235 months. (Id.)

Aligada attests that he did not challenge the inclusion of these offenses as qualifying convictions under the ACCA because each of them qualified as a predicate

---

motion. (Order of 7/8/15 at 1 [Doc. No. 59].)

offense under the law and any challenge would have been frivolous.  (Id. ¶ 7.)

As a matter of law, the Court agrees that any legal challenge to the application of the ACCA to Powers' sentence would have failed, for all of the reasons previously noted, but most notably because Powers had more than three qualifying predicate offenses.  In addition to the Aligada Affidavit, the record demonstrates that Aligada provided effective representation to Powers regarding the application of the ACCA.  Not only did Aligada properly explain the law to his client, at Powers' change of plea and sentencing hearings, Aligada respectfully noted Powers' disagreement with the ACCA, from a policy standpoint, while acknowledging the propriety of the ACCA's application as a matter of law.  Specifically, at Powers' change of plea hearing, Aligada acknowledged that while the ACCA applied to many of Powers' offenses, and "this Court's hands are tied," he nonetheless gave voice to Powers' policy concerns about the ACCA.  (Sentencing Tr. at 9 [Doc. No. 44]; see also Plea Hearing Tr. at 16-17 [Doc. No. 47].)

Powers himself addressed these concerns at both hearings.  Moreover, at his change of plea hearing, Powers expressed his understanding that any disagreement with legislation is appropriately directed to the legislative branch of government.  (Plea Hearing Tr. at 17 [Doc. No. 47].)   At sentencing, Powers again voiced his disagreement with the ACCA's inclusion of older offenses as qualifying offenses.  (Sentencing Tr. at 10 [Doc. No. 44].)

Defendant-Petitioner fails to meet the heavy burden necessary to demonstrate that counsel provided ineffective assistance.  To the contrary, all of the evidence before the

Court demonstrates that Aligada provided exemplary legal representation.  He gave sound legal advice, while also respectfully ensuring that his client's concerns about a matter of legislative policy were heard.   Powers himself expressed satisfaction with the assistance of counsel.  (Plea Hearing Tr. at 6 [Doc. No. 47].)

Even assuming that counsel's performance was deficient, which it was not, Powers cannot establish that he was prejudiced – that *but for* counsel's supposed errors, Defendant-Petitioner's sentence would have been different.  See Strickland, 466 U.S. at 688.   Essentially, Powers argues that had Aligada properly advised him that his conduct did not constitute a crime, he would have gone to trial.  (See Def.'s Mem. Supp. § 2255 Mot. at 2 [Doc. No. 53].)   Powers' conduct of being a felon in possession – conduct to which he freely admitted his guilt (Plea Hearing Tr. at 29-31 [Doc. No. 47]) – constituted a crime.  There is no evidence in the record, other than Powers' self-serving statements in his motions and memoranda, that supports his claim of innocence.  Specious predicates, unsupported by any credible allegations and facts, and speculative outcomes do not establish a reasonable probability that *but for* counsel's supposed errors, Defendant-Petitioner's sentence would have been different.  See Strickland, 466 U.S. at 688.  Accordingly, Defendant-Petitioner's claim for relief on the basis of ineffective assistance of counsel is denied.

### 3.   Supervised Release Conditions

In his Pro Se Motion to Modify Supervised Release Pursuant to 18 U.S.C. § 3583(e)(2) [Doc. No. 55], Defendant-Petitioner objects to the imposition of nine

26

supervised release conditions, for which he seeks modification.  (Def.-Pet'r's Mot.

Modify Supervised Release at 1-2 [Doc. No. 55].)  He cites United States v. Thompson,

777 F.3d 368 (7th Cir. 2015), for the proposition that the supervised release conditions

are overly broad, vague, or not tailored to his unique characteristics.  (Id.)

District courts have broad discretion to impose conditions of supervised release,

so long as the conditions comply with the limits set out in 18 U.S.C. § 3583(d).  United

States v. Johnson, 773 F.3d 905, 907-08 (8th Cir. 2014).  Specifically, the conditions

must "(1) [be] reasonably related to the pertinent § 3553(a) sentencing factors, (2)

involve[ ] no greater deprivation of liberty than reasonably necessary for the purposes set

forth in § 3553(a), and (3) [be] consistent with any pertinent policy statements issued by

the United States Sentencing Commission."  Id. (quoting United States v. Mefford, 711

F.3d 923, 926 (8th Cir. 2013)).  A district court is authorized to modify, reduce, or

enlarge conditions of supervised release "at any time prior to the expiration of the period

of supervised release."  United States v. Yankton, 168 F.3d 1096, 1098 n.6 (8th Cir.

1999); see also 18 U.S.C. § 3583(e)(2).

Although the Eighth Circuit does not appear to have directly addressed whether a

motion for modification is the appropriate vehicle for challenging the legality of the

imposition of supervised release conditions, this Court has previously observed that

"numerous other circuit courts have determined that a motion for modification [under §

3583(e)] may not be used to challenge errors committed at sentencing, including the

imposition of illegal or unconstitutional conditions."  United States v. Romig, No. 00-CR-

355(1) (JRT), 2014 WL 1048390, at *2 (D. Minn. Mar. 18, 2014) (citing United States v. Gross, 307 F.3d 1043, 1044 (9th Cir. 2002); United States v. Hatten, 167 F.3d 884, 886–87 (5th Cir. 1999); United States v. Lussier, 104 F.3d 32, 34–37 (2d Cir. 1997)). Rather, such a challenge may be asserted through direct appeal, a § 2255 habeas motion, or a motion to correct a sentence brought under Fed. R. Crim. P. 35.  Id. (citing Gross, 307 F.3d at 1044; Lussier, 104 F.3d at 37.)  Because Defendant-Petitioner's claim challenges the legality of the imposed conditions, the Court construes this motion as one to amend his § 2255 motion to include this claim.  See United States v. Sellner, 773 F.3d 927, 932 (8th Cir. 2014) (liberally construing pro se petitioner's filings so that a second motion could be considered a motion to amend a pending § 2255 motion where the § 2255 motion had not yet been adjudicated on the merits or dismissed with prejudice).

Of the 13 "Standard Conditions of Supervision" listed in the Judgment in this case, Defendant-Petitioner challenges the following conditions:

> 3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
>
> 4) the defendant shall support his or her dependants and meet other family responsibilities;
>
> 5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
>
> 6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
>
> 7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or

28

any paraphernalia related to any controlled substances, except as prescribed
by a physician;

8) the defendant shall not frequent places where controlled substances are
illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal
activity and shall not associate with any person convicted of a felony,
unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any
time at home or elsewhere and shall permit confiscation of any contraband
observed in plain view of the probation officer; and

13) as directed by the probation officer, the defendant shall notify third
parties of risks that may be occasioned by the defendant's criminal record or
personal history or characteristics and shall permit the probation officer to
make such notifications and to confirm the defendant's compliance with
such notification requirement.

(J. in a Criminal Case at 3 [Doc. No. 37].)

In Thompson, the Seventh Circuit remanded to the district courts the sentences of

four defendants, finding that certain standard conditions of release were vague or

overbroad when the district courts imposed them without evaluating the propriety of the

conditions under the factors listed in 18 U.S.C. § 3553. 777 F.3d at 376-82.  Defendant-

Petitioner seeks modification of the supervised release conditions noted above, consistent

with the decision of the United States District Court for the Northern District of Indiana

in United States v. Marvin, No. 2:99-CR-148, 2015 U.S. Dist. LEXIS 65728, at *2-14

(N.D. Ind. May 20, 2015).  (Def.-Pet'r's Mot. Modify Supervised Release at 2 [Doc. No.

55].)  The court in Marvin, over which the Seventh Circuit has appellate jurisdiction,

modified the defendant's conditions of supervised release based on Thompson.

29

Thompson, however, is not binding on this Court, as this Court is required to follow the

precedent of the United States Supreme Court and the Eighth Circuit Court of Appeals in

cases arising under federal law.

As to Eighth Circuit authority, it does not appear that the Eighth Circuit has ruled

on this precise issue.  Although this issue arose in an Eighth Circuit case, United States v.

Andis, 333 F.3d 886, 888 (8th Cir. 2003) (en banc), the court based its ruling on the

waiver of the defendant's appellate rights, finding that the waiver foreclosed any relief.

Id. at 894.  However, in another Eighth Circuit case, coincidentally entitled United States

v. Thompson, in which a defendant's special conditions of supervised release were

challenged, the court held that a district court's failure to make individualized findings on

the record was harmless error where other evidence on the record demonstrated the basis

for imposing the special conditions of supervised release.  653 F.3d 688, 694 (8th Cir.

2011).

Notably, the challenged conditions of supervised release here are among the 13 set

forth in the Sentencing Guidelines as "standard" conditions recommended for

probationers.  U.S.S.G. § 5B1.3.  Defendant-Petitioner's lengthy criminal history,

particularly involving drug convictions and substance abuse, supports the imposition of

the challenged standard supervised release conditions, several of which concern the use of

controlled substances and alcohol.  Moreover, given Powers' past recidivism, as reflected

in the PSR and discussed at the plea hearing and at sentencing, the supervised release

conditions regarding contact with the probation officer, support of any dependents,

30

gainful employment, and lack of contact with persons engaging in unlawful activity were also appropriately applied to Powers.

To the extent that Powers argues that his ineffective assistance of counsel claim is based on his counsel's failure to object to the imposition of these supervised release conditions, any such claim fails. Even assuming that counsel was somehow deficient in challenging the imposition of these conditions – a proposition with which this Court disagrees – Defendant-Petitioner cannot demonstrate that *but for* counsel's failings, he would have obtained a different sentence. Strickland, 466 U.S. at 688. The terms of Defendant-Petitioner's supervised release conform to the requirements of § 3583(d), and the sentencing factors enumerated under § 3553(a). Any argument to the contrary would have failed.

Because the Court finds that Defendant-Petitioner is not entitled to relief on his supervised release claim, making amendment of his § 2255 futile, his motion to amend to assert such a claim is denied. However, the denial of this motion is without prejudice to his ability to move in the future for modification of the terms of supervised release under 18 U.S.C. § 3583(e)(2), at a time when such a claim may be ripe.[5]

---

[5] This Court has noted that while a motion to modify a condition of supervised release under § 3583(e)(2) may be brought at any time prior to the expiration or termination of the term of supervised release, such motions are not generally ripe for adjudication until such time as the enforcement of the conditions is imminent. Romig, 2014 WL 1048390, at *2 (citing United States v. Zimmerman, 481 F. App'x 199, 201 (5th Cir. 2012); United States v. Broome, No. 13-678, 2013 WL 1405947, at *1 (D. Minn. Apr. 8, 2013)). Similarly, in United States v. Thomas, 198 F.3d 1063, 1065 (8th Cir. 1999), the Eighth Circuit declined to entertain a challenge to a condition of

### 4.      Voluntariness of Plea

Powers contends that "counsel failed to investigate the crime charged, failed to research the applicable law in relation to statute, and erroneously induced Petitioner to plead guilty to a crime that Petitioner is actually innocent of."  (Def.-Pet'r's Mem. Supp. § 2255 Mot. at 2 [Doc. No. 53].)

Because a guilty plea functions as a waiver of important rights, it is only valid if "done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."  Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (citation omitted).  The Supreme Court has held that the representations of a defendant at a plea hearing constitute a formidable, although not insurmountable, barrier in a subsequent collateral proceeding.  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  The Court has stated:

> The accuracy and truth of an accused's statements at a Rule 11 [guilty plea] proceeding in which his guilty plea is accepted are "conclusively" established by that proceeding unless and until he makes some reasonable allegation why this should not be so.  Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement.

---

supervised release on direct appeal, noting that because the defendant would not be subject to the condition for nearly a decade, his vagueness claim was premature.  The court observed that during that time, "any number of events may occur that would make the condition irrelevant. Until such time as the condition's enforcement is imminent, the dispute is only abstract."  Id.

Richardson v. United States, 577 F.2d 447, 450 (8th Cir. 1978), cert. denied, 442 U.S.

910 (1979) (quoting United States v. Williams, 536 F.2d 247, 249-250 (8th Cir. 1976)).

At the plea hearing here, Powers stated under oath that he made his guilty plea

voluntarily and free of coercion.

BY THE COURT:

Q. Mr. Powers, are you making this plea voluntarily and of
your own free will?

A. Yes, ma'am.

Q. Has anyone forced you, threatened you, coerced you, or
done any violence to you or your family to get you to plead
guilty?

A. No.

Q. Are you pleading guilty because you're guilty of this
crime?

A. Yes.

(Plea Hearing Tr. at 30 [Doc. No. 47].)

Against these conclusive statements, Defendant-Petitioner merely offers

conclusory and unsupported allegations.  Notably absent is any plausible excuse for his

statements at the plea hearing, made under oath, denying that he received any promises or

inducements to enter a plea of guilty.  Moreover, the Court ascertained that Powers was

thinking clearly and that he understood the nature of the proceedings and the charges

against him as well as the rights that would be waived by a guilty plea and the possible

penalties involved.  (Id. at 5-13.)  In addition, the Court inquired as to whether any threats

33

or promises had been made to induce Powers to plead guilty, and he denied that any such promises, threats or agreements had been made.  (<u>Id.</u> at 25.)   This Court then found that the plea was knowledgeably, intelligently, and voluntarily made.  (<u>Id.</u> at 31.)   All of this belies Powers' claim that he was induced to enter a guilty plea and belies any claim of ineffective assistance of counsel in this regard.  Moreover, even if Powers could somehow establish that counsel was ineffective as to this issue, he has not established a reasonable probability that *but for* counsel's supposed errors, his sentence would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. at 688.

### 5.    Right to Evidentiary Hearing and Appointment of Counsel

As to Defendant-Petitioner's request for an evidentiary hearing [Doc. No. 55 at 2], a petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  A petition can be dismissed without a hearing if: "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  <u>Engelen v. United States</u>, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).  Here, because Powers' claims are contradicted by the record and the law and his allegations are conclusions rather than statements of fact, his § 2255 motion is denied without an evidentiary hearing.

Regarding Defendant-Petitioner's request for appointment of counsel [Doc. No. 55 at 2], there is no general right to counsel in post-conviction habeas corpus proceedings.

United States v. Craycraft, 167 F.3d 451, 455 (8th Cir. 1999) (citations omitted).  The

Court may appoint counsel in a § 2255 action if the interests of justice so require.  18

U.S.C. § 3006A; 28 U.S.C. § 2255(g).   The Eighth Circuit has held that if a petitioner

presents only frivolous claims or claims that are clearly without merit, the court should

dismiss the case without appointment of counsel.  Abdullah v. Norris, 18 F.3d 571, 572

(8th Cir. 1994).  However, if the petitioner has presented a nonfrivolous claim, the court

must determine, based on the circumstances of the case, whether the interests of justice

require the appointment of counsel.  Id.  In making this determination "a district court

should consider the legal complexity of the case, the factual complexity of the case, the

petitioner's ability to investigate and present his claim, and any other relevant factors."

Id. (citations omitted).

The Court finds that Defendant-Petitioner's claims are without merit and this

matter should be dismissed.  Thus, there is no basis for the appointment of counsel.  But

even if the Court found that Defendant-Petitioner's claims were not frivolous, the

interests of justice do not require the appointment of counsel.  Defendant-Petitioner's

claims are not legally complex and the record here contains sufficient, non-complicated

factual information from which to make any necessary factual determinations and this

Court is well-familiar with the legal claims asserted.  Moreover, while Defendant-

Petitioner contends that he "do[esn't] understand what is going on" (Powers Aff. at 1

[Doc. No. 63]), he has filed several motions in addition to the § 2255 petition,

demonstrating his ability to argue his position and articulate legal arguments.

Accordingly, given the circumstances of this case, the interests of justice do not require the appointment of counsel.

### 6.      Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(1)(B).  A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." <u>Fleiger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing <u>Lozada v. Deeds</u>, 498 U.S. 430, 432 (1991) (per curiam)).  Accordingly, the Court declines to issue a certificate of appealability.

### B.      Additional Motions

### 1.      Return of Seized Cash

In a separate motion, Defendant-Petitioner moves for the return of $435 in seized cash.  (Def.-Pet'r's Mot. for Return of Property [Doc. No. 54].)  He asserts that when he was arrested by state authorities in March 2013, $435 was seized.  (<u>Id.</u> at 1.)  When the federal government undertook his prosecution, Powers alleges that all seized evidence was turned over to the United States.  (<u>Id.</u>)  He argues that the government has no legitimate reason to retain the property and that it should be returned to him.  (<u>Id.</u>)

Pursuant to the Federal Rules of Criminal Procedure, persons aggrieved by an unlawful search and seizure of property may move for the property's return.  Fed. R.

Crim. P. 41(g).  Under Rule 41(g), the movant must establish legal entitlement to the property, which may involve an evidentiary hearing.  <u>Jackson v. United States</u>, 526 F.3d 394, 396 (8th Cir. 2008) (citation omitted).  After the movant has met this burden, the government must then establish a legitimate reason to retain the property.  <u>Id.</u> at 397 (citations omitted).  If it is apparent that the moving party is not lawfully entitled to own or possess the property, then no evidentiary hearing is required.  <u>United States v. Felici,</u> 208 F.3d 667, 670 (8th Cir. 2000), <u>abrogated on other grounds</u>, <u>Henderson v. United States</u>, 135 S. Ct. 1780, 1784 (2015).  The Eighth Circuit has stated, "A Rule 41(g) motion 'is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'"  <u>Jackson</u>, 526 F.3d at 397 (quoting <u>United States v. Vanhorn</u>, 296 F.3d 713, 719 (8th Cir. 2002)).

The Court finds the facts of this case similar to certain of the facts in <u>United States v. Lainfiesta-Areyanos</u>**,** 373 Fed. App'x. 659, 660 (8th Cir. 2010).  In <u>Lainfiesta-Areyanos</u>, the defendant filed a Rule 41(g) pro se motion seeking return of property seized from him at the time of his arrest.  The seized property included a sum of cash, among other things.  <u>Id.</u>  Along with the government's response, the government filed two exhibits which included police reports and a forfeiture notice from the Hennepin County Attorney's Office indicating that $1,602 had been forfeited through state proceedings.  <u>Id.</u>  On the basis of these documents, the district court denied the Rule 41(g)

motion as to the cash, finding that "the $1,602 was subject to forfeiture."[6]  On appeal, the

Eighth Circuit affirmed the denial of the motion as to the cash, explaining that "[t]he

record showed that $1,602 had been forfeited through state proceedings, and Lainfiesta

clearly had no right to possess this cash."

Here too, the Government has submitted police records demonstrating that $435

was seized by state authorities during the Minneapolis Police Department's execution of a

search warrant.  (MPD Case Report at 4 [Doc. No. 56-1].)  At the time of seizure, Powers

received a Notice of Intent to Forfeit Vehicle/Property, that identified the property in

question as "$435 in U.S. currency."  (Notice of Intent [Doc. No. 56-2 at 2].)  The notice

indicated the procedure for a claimant to seek the return of the property.  (Id.)

Subsequently, a June 17, 2013 forfeiture notice from the Hennepin County Attorney's

Office indicated that it had not received a notice for judicial determination from Powers

regarding the property within 60 days of seizure and the $435 would therefore be

forfeited.  (Hennepin Cnty. Atty's Office Notice [Doc. No. 56-2].)   The notice indicated

that the proceeds of the forfeiture would be distributed to the Minneapolis Police

Department, the Minnesota Department of Finance, and the Hennepin County Attorney's

Office. (Id.)  Nearly two years later, in May 2015, Powers sought the return of the

---

[6]  While the movant in Lainfiesta-Areyanos also sought the return of items of
personal property, id. at 660, because the instant motion involves only the return of cash,
the Court confines its discussion of Lainfiesta-Areyanos to the request for the return of
cash.

property from Hennepin County.  (Mot. for Return of Seized Property in Hennepin Cnty. [Doc. No. 60-1].)

As with the cash in <u>Lainfiesta-Areyanos</u>, Powers has not established lawful entitlement to the $435, which was forfeited through state proceedings.  His belated efforts to contest the forfeiture occurred long after the forfeiture.  Because the evidence demonstrates that the property was administratively forfeited, the Government lacks any possession or control over the property, and Defendant-Petitioner's Rule 41(g) motion is denied.  In addition, as Defendant-Petitioner is not lawfully entitled to own or possess the property, no hearing is required.  <u>Felici,</u> 208 F.3d at 670.

### 2.      Judicial Notice

Finally, Defendant-Petitioner moves for this Court "to take judicial notice that all pleadings have come from the Defendant's jailhouse lawyer and not the pro se defendant."  (Mot. to Take Judicial Notice [Doc. No. 62].)  Powers appears to make this motion to bolster his claim that he is unable to represent himself and lacks "the legal understanding to comprehend legal matters."  (<u>Id.</u>)  In particular, he indicates that when he was informed of the Government's Motion to Confirm Waiver of Attorney-Client Privilege [Doc. No. 58], he asked another inmate to assist him.  (<u>Id.</u>)  He therefore requests the appointment of an attorney prior to considering whether he should enter into "any waiver."  (<u>Id.</u> at 2.)

Regardless of who may be assisting Powers with his pleadings and motion practice, he has demonstrated sufficient understanding of the law and the ability to

advocate for himself, as this Court has noted.  The appointment of counsel is not required

here.  As to the particular waiver of attorney-client privilege, Powers requires no legal

counsel, as there is no such waiver decision to be made.  Rather, Powers himself

effectively waived the privilege by filing his § 2255 motion attacking the assistance of

counsel.  See Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) (holding that the

attorney-client privilege is waived by the client "when he attacks his attorney's

competence in giving legal advice, puts in issue that advice and ascribes a course of

action to his attorney that raises the specter of ineffectiveness or incompetence.").  The

Government filed the motion seeking confirmation of that waiver as a precaution,

presumably to alert the Court and Defendant-Petitioner that Mr. Aligada would either

provide an affidavit or testimony regarding his otherwise privileged communications with

his client.  (Gov't's Mot. to Confirm Waiver at 1-2 [Doc. No. 58].)  The Court granted

that motion [Doc. No. 59].  Accordingly, Defendant-Petitioner's Motion to Take Judicial

Notice is denied.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS**

**HEREBY ORDERED** that

1.  Defendant-Petitioner Robert Lee Powers' pro se motion pursuant to 28

    U.S.C. § 2255 for an order of this Court to vacate, set aside, or correct his

    sentence [Doc. No. 52] is **DENIED**;

2.  Defendant-Petitioner's pro se Motions for Return of Property [Doc. Nos. 54

    & 60] are **DENIED**;

3.      Defendant-Petitioner's pro se Motions to Amend [Doc. Nos. 61 & 66] are

        **DENIED**;

4.      Defendant-Petitioner's pro se Motion to Take Judicial Notice [Doc. No. 62]

        is **DENIED**;

5.      Defendant-Petitioner's pro se Motion to Modify Supervised Release [Doc.

        No. 55] is **DENIED** to the extent that it is construed as a Motion to Amend

        the § 2255 Motion and **DENIED WITHOUT PREJUDICE** as to

        Defendant-Petitioner's ability to bring a Motion to Modify Supervised

        Release under 18 U.S.C. § 3583 when such a motion is ripe for

        adjudication;

6.      No evidentiary hearing is required in this matter;

7.      Defendant-Petitioner's request for appointed counsel is **DENIED** [Doc. No.

        55]; and

8.      A Certificate of Appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   September 28, 2015

                                    s/Susan Richard Nelson
                                    SUSAN RICHARD NELSON
                                    United States District Court Judge